UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 10-1048-CV-W-HFS |
| | ) | |
| GERALD A. POYNTER, II, | ) | Judge Howard F. Sachs |
| a/k/a Brother Jerry Love, Jerry Love, | ) | |
| d/b/a Heartland Investment Group, LLC; | ) | |
| Sharper Solutions, LLC; Sharper Solutions | ) | |
| Family Foundation; Sharper Solutions | ) | |
| Foundation; Blackbelt Tax Services; | ) | |
| Sharper Solutions Tax Services; Etree; | ) | |
| Luckytown; AKKA; Jerry Love Ministries; | ) | |
| and/or The Dojo, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Upon motion (doc. 15) by Plaintiff, United States of America, the Court makes the following findings of fact and conclusions of law and enters this final judgment and permanent injunction against Defendant Gerald A. Poynter, II. The motion will be GRANTED.

**Findings of Fact**

1. This action has been requested by the Chief Counsel of the Internal Revenue Service ("IRS"), a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General under 26 U.S.C. ("I.R.C.") §§ 7402, 7407, and 7408.

*The Defendant, Gerald A. Poynter, II*

2. Gerald A. Poynter, II, resides in Kansas City, Missouri, and does business in Blue Springs, Missouri.

3. He prepares tax returns for others, or assists in preparing tax returns for others, in exchange for lucrative compensation.

4. Poynter does not have a Electronic Filer Identification Number registered in his name. Poynter has not signed and does not sign the tax returns that he prepares and/or files on behalf of his customers.

5. He holds himself out as an expert on tax preparation and promises clients large refunds.

*Poynter's Abusive Tax Scheme*

6. Poynter has prepared, and assisted others in preparing, numerous abusive returns in the past three years. In an attempt to legitimize these returns, he has also prepared and filed with the IRS numerous fraudulent documents that purport to substantiate the false numbers on customers' returns. He has also enlisted others to work for him to extend the abusive scheme still further.

7. Poynter's abusive tax scheme is based upon using otherwise authentic IRS forms to fabricate information that ultimately "substantiates" a taxpayer's fraudulent tax return. He uses IRS Forms 1099-OID and Forms 1099-A to fabricate taxpayer information. These Forms are "information returns," on which companies provide the IRS information about, for example, money paid to an individual taxpayer by an entity and any federal income tax that the entity withheld.

8. When he works directly with a customer, Poynter requires the customer to provide him with evidence of his or her mortgage loans, car loans, credit card debts, and bank accounts. He then uses that information to prepare fraudulent Forms 1099-OID and/or 1099-A.

9. These frivolous Forms purport to show that the customer has lent money to the creditor (instead of the other way around). The amount of the false income reported appears to be in an amount needed to satisfy the debt actually owed by the customer to the creditor, or

nearly that amount. The Forms also report tax withholding for the full amount, or nearly the full amount, of the phony income.

10. The falsely high income and falsely high withholding from the fraudulent Forms are then reported on the customer's original or amended federal income tax return. The result is an inflated tax liability for the customer, but with a correspondingly inflated false claim for a refund, often exceeding $200,000. One of the returns Poynter prepared for a customer, or assisted in preparing, included a fraudulent refund claim in the amount of $5.3 million for tax year 2007.

11. The IRS has identified at least 165 returns that Poynter prepared and filed, or assisted in preparing and filing, in 2008 and 2009 that request refunds based on Poynter's tax-fraud scheme. For example, he assisted and/or prepared the following fraudulent tax returns:

   a. In 2008, Poynter prepared, or assisted in preparing, fraudulent tax information documents and a 2007 Form 1040 federal income tax return for John and Marinella Perdido, who reside in Temecula, California. The Perdidos' 2007 federal income tax return falsely claims that they earned interest income in 2007 in the amount of $1,324,333. That purported interest income, combined with the Perdidos' other income and deductions, result in a grossly inflated taxable income of $1,373,447. The return also falsely claims that $1,328,617 of federal income tax was withheld on their behalf. The Perdidos' supposed taxes reported on their 2007 return was $572,601, far less than the purported federal income tax withheld on their behalf. As a result, the Perdidos requested a refund in the amount of $875,705.

       i. The IRS erroneously issued a refund to the Perdidos in the amount of $875,705, a refund to which they were not entitled.

ii. At the time the Complaint initiating this case was filed, the IRS has recovered only $83,128 of the erroneous refund.

iii. After receipt of the fraudulent refund, a wire transfer of $118,000 was sent from John Perdido to the bank account of Gerald A. Poynter, DBA Jerry Love Ministries.

b. In 2009, Poynter prepared, or assisted in preparing, fraudulent tax information documents and fraudulent federal income tax returns for tax years 2005, 2006, and 2007 for Dewey M. Bracken, Jr., who resides in Blountville, Tennessee. Bracken's 2005 federal income tax return falsely claims that he earned interest income in the amount of $1,619,202. Attached to the return are thirteen fraudulent Forms 1099-OID and thirteen fraudulent Forms 1099-A that purport to substantiate the interest income that Bracken allegedly earned during tax year 2005. None of these Forms accurately reflect actual income earned or federal income tax withholding for Bracken in 2005. The purported interest income, combined with Bracken's other income and deductions, result in a grossly inflated taxable income of $1,673,072. The return also falsely claims that $1,538,174 of federal income tax was withheld on his behalf. Bracken's supposed taxes reported on his 2005 return was $572,601, far less than the purported federal income tax withheld on his behalf.

i. As a result, Bracken requested a refund of $965,438 for tax year 2005, a refund to which he was not entitled.

ii. Bracken's tax returns for tax years 2006 and 2007 generally follow the same pattern.

iii. As a result of Poynter's tax-fraud scheme, the total dollar amount of the

    refunds claimed by Bracken in April 2009 for tax years 2005, 2006, and 2007 was more than $1.5 million.

 c. In addition to preparing returns for his customers, Poynter also prepared returns for himself and his wife, Jaclyn Poynter. In August 2008, he prepared a fraudulent amended income tax return, and supporting documents including fraudulent Forms 1099-OID, for tax year 2005. The return requested a refund of $165,672. As a result of the fraudulent claims, the IRS erroneously issued a refund to Gerald and Jaclyn Poynter in the amount of $193,067.83, of which only $70,000 has been recovered.

***Poynter Files Additional Fraudulent Documents with the IRS***

12. Poynter has filed, or has directed to be filed, with the IRS Forms 1096 listing all of the fraudulent Forms 1099 that he creates. Poynter files these Forms 1096, "Annual Summary and Transmittal of U.S. Information Returns," in an attempt to provide legitimacy to Poynter's scheme. The Forms 1096 summarize and transmit the fraudulent Forms 1099 that Poynter's customers use in support of their requests for illegal refunds. The Forms 1096 provide a superficial gloss of legitimacy to the fake Forms 1099 and resulting claims for refund, and require the IRS to perform additional work to prevent them from being honored.

***Poynter Works to Promote His Abusive Tax Scheme***

13. In addition to working with individuals to prepare, or assist in preparing their fraudulent tax returns, Poynter is dedicated to promoting this abusive tax scheme through a network of "affiliates" or "branch managers" who, in turn, directly solicit clients to participate in the same scheme or a similar scheme.

14. Poynter's abusive tax scheme is a version of the repeatedly rejected "redemption"

scheme. Proponents of commercial redemption claim that the United States government is in possession of money rightfully owned by the taxpayer.

15. Poynter has promoted his scheme using this theory and related theories. For example, Poynter has told, and may continue to tell customers he can "recover" their money from the United States, for a fee. He then generated, and may continue to generate, fraudulent Forms 1099-OID and/or Forms 1099-A to support the fraudulent income tax returns claiming refunds of federal tax payments that were never made.

16. The scheme employed by Poynter exemplifies a growing trend among tax defiers to rely on the frivolous redemption theory in order to evade tax obligations or obtain other wrongful financial benefits, often using fraudulent IRS Forms 1099.

*Poynter Will Not Cease His Illegal Behavior*

17. Poynter has spread his abusive tax scheme for at least two years with complete disregard for the internal revenue laws and is likely continuing to do so.

18. The scheme is lucrative for him. In exchange for Poynter's fraudulent "services," his customers typically paid a fee of fifteen percent of any refund they obtained. For a $200,000 refund, Poynter's fee would be about $30,000.

19. The lucrative nature of the scheme, combined with his recruitment of "affiliates" to market the same scheme, shows that he will not voluntarily stop his illegal activity.

*Poynter's Activities Will Cause Irreparable Harm*

20. The harm caused by Poynter's abusive tax scheme is widespread. The United States Treasury, Poynter's customers, and the taxpaying public are all adversely affected.

21. The United States Treasury has been defrauded through tax refunds wrongfully issued and rightful tax liabilities uncollected.

22. Many of the 165 fraudulently requested refunds identified to date that Poynter prepared or assisted in preparing exceed $200,000. At least fifteen fraudulent refund requests exceed $1 million. The total amount of refunds requested on the 165 fraudulent returns is approximately $64 million. (*Id.*)

23. Poynter's tax scheme has resulted in the issuance of at least $6.4 million in erroneous refunds to his customers.

24. The IRS has been forced to implement new procedures to filter and investigate the fraudulent tax returns that Poynter prepared, or assisted in preparing. But there is no way to ensure that every aspect of Poynter's illegal conduct is met with scrutiny within the IRS.

25. The scheme also causes harm to the creditors that have entered into business relationships with his customers. If creditors receive fraudulent Forms 1099 from the taxpayers, they must spend time and resources to determine their falsity and risk receiving audit or penalty notices from the IRS. Any false Forms 1099 submitted with Poynter's returns may also result in the assessment of erroneous penalties against creditors identified in the false Forms 1099 for failing to timely submit those forms to the IRS.

26. Poynter's customers have also incurred direct financial harm because they remain liable for any lawful tax unpaid, may be liable for interest and substantial penalties, which can amount to as much as 20 percent of the excessive refund claimed. They could also be subject to criminal prosecution.

## Conclusions of Law

27. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1346 and 26 U.S.C. §§ 7402(a), 7407, and 7408.

28. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1396.

29. Where, as here, default has been entered, the defendant loses his right to present evidence on issues other than unliquidated damages. On entry of default, "the factual allegations of a complaint . . . are taken as true." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). Moreover, the Court may take judicial notice of its own docket. The effect of the Court's entry of default in this case on February 11, 2011, therefore, is to preclude Poynter from contesting the allegations in the Complaint.

30. Poynter's scheme is unlawful, as numerous courts have held. *E.g.*, *United States v. Morris*, No. 09-cv-02381, 2011 WL 587584, at *1-2 (D. Colo. Feb. 7, 2011); *United States v. McIntyre*, 715 F. Supp. 2d 1003, 1006-08, 1012 (C.D. Cal. 2010); *United States v. Knupp*, No. 1:09-CV-2724, 2010 WL 2245551, at *1-5, 7-9 (N.D. Ga. May 14, 2010); *United States v. $315,298.52 in U.S. Currency*, No. 09-0520, 2010 WL 1529404, at *1-2 (D. Md. Apr. 14, 2010); *United States v. Marty*, No. CIV S-09-06000, 2010 WL 323518, at *5-7, 13 (E.D. Cal. Jan. 14, 2010); *United States v. Miller*, No. 3:09-1030, 2009 WL 4060274, at *1-4, 7 (M.D. Tenn. Nov. 23, 2009).

31. Internal Revenue Code § 7407 authorizes the United States to seek an injunction against any tax return preparer who has engaged in any "fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws," or who has "engaged in any conduct subject to penalty under section 6694 or 6695."

32. If a return preparer's misconduct is continual or repeated and the court finds that a

narrower injunction (*i.e.,* prohibiting specific enumerated conduct) would not be sufficient to prevent the preparer's interference with the proper administration of federal tax laws, the court may enjoin the person from further acting as a return preparer.

33. Poynter has repeatedly prepared and filed with the IRS false and frivolous federal income tax returns on behalf of his customers.

34. As a result, Poynter has repeatedly engaged in fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws.

35. Poynter has repeatedly and continually prepared and filed federal tax returns that understate his customers' tax liabilities as a result of unreasonable and frivolous claims and has thus engaged in conduct subject to penalty under 26 U.S.C. § 6694.

36. Poynter has repeatedly and continually prepared and filed federal tax returns that understate his customers' tax liabilities as a result of Poynter's willful attempt to understate his customers' tax liabilities and/or Poynter's reckless and/or intentional disregard of internal revenue laws and regulations.

37. Injunctive relief is appropriate to prevent this misconduct because, absent an injunction, Poynter is likely to continue to prepare false federal income tax returns and engage in other misconduct of the type described herein.

38. Poynter should be permanently enjoined under 26 U.S.C. § 7407 from acting as a federal tax return preparer because a more limited injunction would be insufficient to stop him from interfering with the proper administration of the tax laws.

39. I.R.C. § 7408 authorizes a district court to enjoin any person from, *inter alia*, engaging in conduct subject to penalty under I.R.C. §§ 6700 or 6701 if injunctive relief is appropriate to prevent recurrence of that conduct.

40. Section 6700 imposes a penalty on any person who organizes or participates in the sale of a plan or arrangement and, in so doing, makes a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by participating in the plan or arrangement which that person knows or has reason to know is false or fraudulent as to any material matter.

41. For at least two years, Poynter organized and participated in the sale of a plan or arrangement and, in doing so, made false and fraudulent statements with respect to the tax benefits of participating in the plan or arrangement which Poynter knew or had reason to know were false.

42. Poynter falsely promised large tax refunds from the government, which he knew or had reason to know was predicated on the submission of false and frivolous documents to the IRS.

43. As a result, Poynter engaged in conduct subject to penalty under 26 U.S.C. § 6700.

44. Section 6701 imposes a penalty on any person who aids or assists in, procures, or advises with respect to, the preparation of any portion of a return, affidavit, claim, or other document, who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and who knows that such portion (if so used) would result in an understatement of the liability for tax of another person.

45. Poynter prepared and aided or assisted in the preparation and filing of federal income tax returns and other documents that resulted in the understatement of his customers' tax liabilities.

46. As a result, Poynter engaged in conduct subject to penalty under 26 U.S.C. § 6701.

47. Injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent recurrence of Poynter's penalty conduct.

48. I.R.C. § 7402(a) authorizes a court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

49. Poynter substantially interfered with the enforcement of the internal revenue laws by promoting his "redemption" tax-fraud scheme and filing frivolous federal tax returns and other documents on behalf of his customers.

50. As a result of Poynter's misconduct, his customers failed to file proper tax returns.

51. Poynter's conduct results in irreparable harm to the United States for which the United States has no adequate remedy at law.

52. Poynter's conduct interferes with the proper administration of the Internal Revenue Code because it results in hundreds of frivolous filings with the IRS that harass public officials and hinder the IRS's ability to determine the correct tax liabilities of his customers.

53. Unless enjoined by this Court, Poynter will continue to promote and administer his tax-fraud scheme.

54. The United States is entitled to injunctive relief under I.R.C. § 7402(a) to prevent the recurrence of this misconduct.

## Permanent Injunction

Based on the foregoing findings of fact and conclusions of law, the Court grants the United States' motion for default judgment and enters the following permanent injunction against Poynter:

A. Under I.R.C. §§ 7402 and 7407, Poynter is permanently enjoined from acting as federal tax return preparer and from preparing or filing federal tax returns or other tax forms for others, from representing others before the IRS, and from advising anyone concerning federal tax matters;

B. Under I.R.C. §§ 7402 and 7407, Poynter and his representatives, agents, servants, employees, attorneys, independent contractors, and anyone in active concert or participation with him, are permanently enjoined from directly or indirectly;

    1. Preparing or filing, or assisting in, or directing the preparation or filing of, any federal income tax return or amended return or other related documents or forms for any other person or entity;

    2. Filing, providing forms for, or otherwise aiding and abetting the filing of frivolous Forms 1040 or Forms 1099 for himself or others;

    3. Engaging in activity subject to penalty under I.R.C. §§ 6694 or 6695;

    4. Engaging in any other activity subject to penalty under the Internal Revenue Code; and

    5. Engaging in other conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws;

C. Under I.R.C. §§ 7402 and 7408, Poynter and his representatives, agents, servants, employees, attorneys, independent contractors, and anyone in active concert or

participation with him are permanently enjoined from, directly or indirectly, by means of false, deceptive, or misleading commercial speech:

1. Organizing or selling tax shelters, plans or arrangements that advise or assist taxpayers to attempt to evade the assessment or collection of such taxpayers' correct federal tax;

2. Engaging in any other activity subject to penalty under I.R.C. § 6700, including organizing or selling a plan or arrangement and making a statement regarding the excludability of income or securing of any other tax benefit by participating in the plan that he knows or has reason to know is false or fraudulent as to any material matter;

3. Engaging in any activity subject to penalty under I.R.C. § 6701; and

4. Directly or indirectly organizing, promoting, marketing, or selling any plan or arrangement that assists or incites taxpayers to attempt to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the use of false Forms 1099 based on the false claims that:

    a. Taxpayers can name the Secretary of the Treasury as their fiduciary and/or can draw on the Treasury of the United States to pay their tax debt or other debt using or relying upon Forms 1099-OID, bonded promissory notes, sights drafts or other documents;

    b. Taxpayers can issue false Forms 1099-OID to a creditor and report the amount on the false Form 1099 as income taxes withheld on

their behalf; and

  c. Taxpayers have a secret account with the Treasury Department which they can use to pay their debts or which they can draw on for refunds through a process that is often called "redemption" or "commercial redemption."

D. Under I.R.C. § 7402, Poynter is permanently enjoined from preparing and/or filing his own individual or joint federal income tax returns claiming false income tax withholding and refunds based on amounts shown in false Forms 1099, and from having another person or entity prepare and/or file such false federal income tax returns on his behalf;

E. Under I.R.C. § 7402, Poynter shall send by mail (and also by e-mail, if an address is known) a copy of the executed injunction to all persons who have purchased any products, services, or advice associated with the false or abusive tax scheme described herein, including his "affiliates" or "branch managers," also as described herein.

  1. The mailings shall include a cover letter in a form either agreed to by counsel for the United States or approved by the Court, and shall not include any other documents or enclosures;

  2. The mailings shall be made no later than 30 days from the date of this injunction; and

  3. No later than 30 days from the date of this injunction, Poynter shall file with this Court a sworn certificate that he has complied with the requirements of this paragraph.

F. Under I.R.C. § 7402, no less than 30 days from the date of this injunction and for

a continuous period of three years thereafter, Poynter and his representatives, agents, servants, employees, attorneys, independent contractors and any other persons in active concert or participation with him, shall remove all content regarding the tax scheme described herein from his website(s) and replace that content with a copy of this injunction.

G. Under I.R.C. § 7402, Poynter shall provide to the United States a list of all persons who have purchased any products, services, or advice from him in the past three years, no later than 30 days from the date of this injunction. No later than 30 days from the date of the injunction, Poynter shall file a sworn certification that he has complied with the requirements of this paragraph; and

H. This Court will retain jurisdiction over this case to allow the United States full post-judgment discovery and to monitor Poynter's compliance with the injunction.

Dated: March 24, 2011                        /s/ Howard F. Sachs
                                             HOWARD F. SACHS
                                             UNITED STATES DISTRICT JUDGE